# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CITY OF NEWARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-12-039 PAW |
| | ) | |
| DONALD M. DURKIN | ) | |
| CONTRACTING, INC., DONALD | ) | |
| M. DURKIN, JR., JAMES DURKIN, | ) | |
| MICHAEL DURKIN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: October 4, 2022
Decided: January 6, 2023

*Upon Defendants' Motion to Dismiss*:
**DENIED**.

*Upon Plaintiff's Motion for Summary Judgment*:
**GRANTED, in part and DENIED, in part**.

*Upon Defendants' Motion for Summary Judgment*:
**GRANTED, in part and DENIED, in part**.

## <u>MEMORANDUM OPINION AND ORDER</u>

Max B. Walton, Esq., Shaun Michael Kelly, Esq., Connolly Gallagher LLP, *Attorneys for Plaintiff*.

Paul A. Logan, Esq., Post & Schell, P.C., *Attorney for Defendants*.

Winston, J.

## I. __INTRODUCTION__

Plaintiff, the City of Newark (the "City"), brings this declaratory judgment and breach-of-contract action against Defendants, Donald M. Durkin Contracting, Inc.; Donald M. Durkin, Jr.; James Durkin; and Michael Durkin (collectively, "Durkin"). The City alleges Durkin breached the Settlement Agreement and Mutual Release (the "Settlement Agreement") when Durkin brought a declaratory judgment action (the "Declaratory Judgment Action") against the City, as well as when Durkin served a subpoena (the "2019 Subpoena") on the City seeking attorney-client communications. Durkin moved to dismiss the City's Complaint, and the parties have cross-moved for summary judgment.

For the reasons set forth below, the Court finds the City's Complaint adequately states claims upon which relief could be granted. Accordingly, the Court denies Durkin's motion to dismiss. The Court also finds, pursuant to the Settlement Agreement, Durkin must indemnify the City for the 2019 Subpoena, but not the Declaratory Judgment Action. Therefore, the Court grants summary judgment in the City's favor as to the 2019 Subpoena and grants summary judgment in Durkin's favor as to the Declaratory Judgment Action.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

#### 1. *Donald M. Durkin Contracting, Inc.'s litigation against the City*

Donald M. Durkin Contracting, Inc. ("Contracting") brought an action against the City in the United States District Court for the District of Delaware for wrongful termination of a contract to erect a reservoir and for violation of Contracting's civil rights (the "Federal Litigation").[1] The City retained the law firm of Tighe, Cottrell & Logan ("Cottrell") to represent it in the Federal Litigation.[2] After a jury trial, Contracting was awarded approximately $36 million in damages, which, after post-trial motions, the District Court reduced to approximately $25 million.[3] Both parties appealed to the United States Court of Appeals for the Third Circuit.[4] Simultaneously, they also pursued mediation.[5] The parties entered into the Settlement Agreement prior to submitting briefs to the Third Circuit.[6]

---

[1] *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2020 WL 2991778, at *2 (Del. Super. Ct. June 4, 2020).
[2] *Id.* at *1.
[3] *Id.* at *2-3.
[4] *Id.* at *3.
[5] *Id.*
[6] *Id.*

The Settlement Agreement ended the Federal Litigation between the parties.[7]

Paragraph 5 of the Settlement Agreement contains a general release of the City:

> [F]rom any and all claims, demands, damages, costs, expenses, liability, actions, causes of actions, or claims of liability or responsibility of any kind whatsoever (including attorneys' fees and costs) which [] Durkin … now [has] or may hereafter have on account of, or arising out of any matter or thing which has happened, developed or occurred prior to the signing of this Agreement, specifically including but not limited to, any and all claims on account of, arising out of or in any way related to the matters that were or could have been asserted in the [Federal Litigation], that arise from or are related to the facts or matters at issue in the [Federal Litigation] . . . provided, however, that [Durkin does] not release the [the City] from [its] obligations under this Agreement, and do[es] not release any claims that [it has]  or may have against [Cottrell].[8]

While Paragraph 5 of the Settlement Agreement is a general release of the City by Contracting, Paragraph 7, provides that Durkin will indemnify the City in the event the City is brought into Durkin's litigation against Cottrell.  It states, in pertinent part:

> If … the [City] become[s] a party to the Litigation, or [is a] party to any separate litigation or proceedings related in any way to the Litigation, then Durkin . . . hereby fully release[s] and discharge[s] the [City] from any claims or damages in the Litigation or any separate litigation or proceedings related to the Litigation. . . . If a claim of any nature and by any party, including but not limited to a claim for indemnification or contribution, is brought against the [City] in the Litigation, or in separate litigation or proceedings related to the Litigation, [] Durkin [] agree[s] to: (1) pay all attorneys' fees, expert fees, and costs incurred

---

[7] *See* Compl. Ex. A (hereinafter "Settlement Agreement").  Defendants Donald M. Durkin, Jr.; James Durkin; and Michael Durkin were not parties to the Federal Litigation or the Settlement Agreement.

[8] *Id.* ¶ 5.

4

by the [City] in defense of the Litigation, or separate litigation or proceedings related to the Litigation; and (2) indemnify, defend, and hold the [City] harmless from all actions, causes of action, claims, demands, costs, liabilities, expenses and damages (including attorneys' fees) arising out of, or in connection with any claim in the Litigation or any separate litigation or any separate proceedings related to the Litigation.[9]

Paragraph 18 of the Settlement Agreement, titled, "Continuing Cooperation" states, "The Parties agree to cooperate with each other and take such additional actions as necessary to effectuate the purposes of this Agreement."[10]

### 2.    *Durkin's lawsuit against Cottrell*

After the City and Contracting appealed to the Third Circuit but prior to entering into the Settlement Agreement, Durkin filed a lawsuit in the Pennsylvania Court of Common Pleas against Cottrell, alleging claims of abuse of process, malicious prosecution, and intentional interference with contractual relations (the "Pennsylvania Litigation").[11]  Subsequently, Durkin sought discovery from Cottrell in the Pennsylvania Litigation, but Cottrell invoked attorney-client privilege stemming from its representation of the City in the Federal Litigation.[12]  A year later, Durkin requested the City waive any purported attorney-client privilege for communications between the City and Cottrell.[13]  The City refused.[14]

---

[9] *Id.* ¶ 7.
[10] *Id.* ¶ 18.
[11] 2020 WL 2991778, at *3.
[12] *Id.*
[13] *Id.*
[14] *Id.*

5

In response, Durkin served the City with a series of three out-of-state subpoenas seeking the production of communications between the City and Cottrell for use in the Pennsylvania Litigation. Upon service, the City moved to quash each subpoena, which Durkin then withdrew. The third and final subpoena, the 2019 Subpoena, is the only subpoena for which the City seeks indemnification in the instant action.

### 3. *Durkin's Declaratory Judgment Action against the City*

Following the withdrawal of the 2019 Subpoena, Durkin filed the Declaratory Judgment Action against the City in this Court.[15] Durkin argued the Settlement Agreement obligated the City to assist Durkin in its case against Cottrell, and that the City's refusal to provide the communications between the City and Cottrell was a material breach of the Settlement Agreement.[16] In its motion to dismiss, the City contended that the Settlement Agreement did not require the City to waive attorney-client privilege, the Settlement Agreement released the City from any claim relating to the Pennsylvania Litigation, and Durkin's claims were barred by the statute of limitations.[17] The Court found that statute of limitations barred the Declaratory Judgment Action and granted the City's motion to dismiss.[18]

---

[15] *Id.* at *4-5.
[16] *Id.* at *5.
[17] *Id.*
[18] *Id.* at *10.

Durkin moved for reargument.[19] Durkin argued that the Court misapprehended the law when it rejected Durkin's argument that the Settlement Agreement imposed a continuing obligation on the City to cooperate in the Pennsylvania Litigation.[20] Durkin further argued that whether a contract creates a continuing obligation is a question of intent, and, therefore, not appropriate to determine at the motion to dismiss stage.[21]

The Court denied Durkin's motion for reargument.[22] The Court ruled that the terms of the Settlement Agreement were not ambiguous and nothing in the Settlement Agreement suggested the City had any obligation to cooperate in the Pennsylvania Litigation.[23] The Court concluded that Paragraph 7 of the Settlement Agreement expressly released and discharged the City from any claim that could be related to the Pennsylvania Litigation.[24]

The Court then addressed the City's motion for indemnification, sanctions, and relief against Durkin filed shortly after the City's motion to dismiss.[25] The City argued the three withdrawn subpoenas and the untenable allegations in Durkin's

---

[19] *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2020 WL 5797622 (Del. Super. Ct. Sept. 29, 2020).
[20] *Id.* at *5-6.
[21] *Id.* at *4.
[22] *Id.* at *9.
[23] *Id.* at *10.
[24] *Id.*
[25] *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2020 WL 6588903 (Del. Super. Ct. Nov. 11, 2020).

Declaratory Judgment Action warranted sanctions under Superior Court Civil Rule 11(b)(1).[26] The City also sought to enforce the indemnification provision contained in Paragraph 7 of the Settlement Agreement and attorneys' fees and costs arising from the action and for Durkin's prior subpoenas.[27] The Court denied the request for sanctions.[28] With respect to the indemnification request, the Court found that the request was not ripe.[29] Paragraph 7 of the Settlement Agreement provides a procedure for initiating a request for indemnification.[30] The Court ruled that the City must first follow the procedure set out in the Settlement Agreement before any claim for indemnification was ripe for judicial determination.[31]

### B.    PROCEDURAL HISTORY

Following the Court's rulings, the City served an indemnification demand on Durkin requesting payment for attorneys' fees and costs associated with the Declaratory Judgment Action and the 2019 Subpoena.[32] Durkin refused to pay, and the City filed the instant action.[33] Durkin moved to dismiss the City's Complaint.

---

[26] *Id.* at *4.
[27] *Id.* at *5.
[28] *Id.* at *7.
[29] *Id.*
[30] *Id.* (It states that "Durkin [] shall pay fees and expenses as required by this Section within thirty days of submission of statements" by the City.).
[31] *Id.*
[32] Compl. ¶¶ 47 and 48.
[33] *See* Compl.

The parties also cross-moved for summary judgment. The Court heard oral argument on all the motions.

## III. PARTIES' CONTENTIONS

The City contends that summary judgment is appropriate because the sole issue before the Court is whether the plain language of the Settlement Agreement requires Durkin to indemnify the City for the costs it incurred in defending against the 2019 Subpoena and the Declaratory Judgment Action.[34] The City asserts that Paragraph 5 of the Settlement Agreement is a broad release that protects the City from incurring any costs and expenses related to the Federal Litigation.[35] The City alleges Durkin breached Paragraph 5 of the Settlement Agreement when it served the 2019 Subpoena because it forced the City to incur costs and attorneys' fees in a matter directly related to the Federal Litigation.[36] Further, the City alleges the 2019 Subpoena is a claim related to the Pennsylvania Litigation, and, therefore, pursuant to Paragraph 7, Durkin is obligated to indemnify the City for costs it incurred responding to the 2019 Subpoena.[37] The City also asserts that Durkin breached Paragraph 5 of the Settlement Agreement by bringing the Declaratory Judgment

---

[34] Pl.'s Mot. for Summ. J. ¶ 12.
[35] Compl. ¶ 24.
[36] *Id.* ¶ 36.
[37] Pl.'s Mot. for Summ. J. ¶ 14.

Action, and that the City is entitled to indemnification for costs incurred in that action.[38]

Durkin agrees that there are no outstanding factual disputes that would make summary judgment inappropriate, however, Durkin asserts that it, not the City, is entitled to summary judgment. Durkin alleges that its Declaratory Judgment Action sought clarity with respect to the City's obligations under Paragraph 18 of the Settlement Agreement, and, therefore, it is not within the scope of the indemnification provision in Paragraph 7.[39] Durkin further argues the 2019 Subpoena is not within the scope of Paragraph 7 because it is not a "claim" as that term is understood in the Settlement Agreement.[40] Rather, the 2019 Subpoena is discovery pursuant to the Rules of Civil Procedure.[41] At oral argument, Durkin also argued Paragraph 7 is limited to claims for indemnification or contribution brought by any party against the City in the Pennsylvania Litigation or in a proceeding related to the litigation.[42]

---

[38] Compl. ¶¶ 44-46.
[39] Defs.' Mot. to Dismiss Pl.'s Compl. ¶ 10; Defs.' Resp. in Opp. to Pl.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ¶ 15.
[40] Defs.' Mot. to Dismiss Pl.'s Compl. ¶¶ 8 and 9.
[41] *Id.*
[42] Transcript of Argument on Pl.'s Mot. for Summ. J. and Defs.' Mot. to Dismiss at 10, *City of Newark v. Donald M. Durkin Contracting, Inc., Donald M. Durkin, Jr., James Durkin, Michael Durkin*, C.A. No: N21C-12-039 (Del. Super. Ct. Mar. 11, 2022).

## IV. STANDARD OF REVIEW

### A. MOTION TO DISMISS

A party may move to dismiss a complaint under Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[43] Upon a Rule 12(b)(6) motion to dismiss, the Court: (1) accepts all well-pleaded factual allegations as true; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable inferences in favor of the non-moving party; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[44]

### B. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[45] The movant has the initial burden of demonstrating its motion is supported by undisputed material facts."[46] If that burden is met, the burden shifts to the non-movant to demonstrate that there are material facts in dispute.[47] To determine whether material facts are in dispute, the Court must view the facts in the light most

---

[43] Super. Ct. Civ. R. 12(b)(6).
[44] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).
[45] Super. Ct. Civ. R. 56(c).
[46] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979) (citing *Ebersole v. Lowengrub*, 180 A.2d 467 (Del. 1962)).
[47] Del. Super. Ct. Civ. R. 56(e); *see also Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) ("if the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment.").

favorable to that non-movant.[48]

The standard for summary judgment applies to cross motions for summary judgment.[49] Where cross motions for summary judgment are filed and neither party argues the existence of a genuine issue of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[50] Cross motions for summary judgment do not relieve the Court of its duty to deny summary judgment if a material factual dispute exists.[51] The Court must evaluate each motion separately to determine whether material facts are in dispute.[52]

## V. DISCUSSION

### A. DURKIN'S MOTION TO DISMISS IS DENIED

#### 1. *Count I states a claim upon which relief could be granted*

Delaware courts are authorized to entertain an action for a declaratory judgment, provided that an "actual controversy" exists between the parties.[53] For an "actual controversy" to exist, the following conditions must be met: (1) it must be a

---

[48] *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977).
[49] *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. Ct. 2001).
[50] Super. Ct. Civ. R. 56(h).
[51] *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 166 (Del. Ch. 2003).
[52] *Id.* at 167; *see also Empire of Am. Relocation Servs., Inc. v. Com. Credit Co.*, 551 A.2d 433, 435 (Del. 1988) ("It is imperative that the court consider whether there is a genuine issue of material fact each time [summary judgment] motions are presented.").
[53] *See XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (*citing Stroud v. Milliken Enter., Inc.*, 552 A.2d 476, 479 (Del. 1989)).

controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; and (4) the issue involved in the controversy must be ripe for judicial determination.[54]

The City has met all four necessary conditions to state a claim for declaratory relief. Based on the allegations in the Complaint, Durkin may be obligated to indemnify the City for costs and attorneys' fees the City incurred defending against the 2019 Subpoena and Declaratory Judgment Action. The City demanded indemnification from Durkin, pursuant to the Settlement Agreement. Durkin contends the Settlement Agreement does not obligate it to indemnify the City for the 2019 Subpoena and the Declaratory Judgment Action. Finally, the Complaint pleads a scenario that demonstrates an actual controversy regarding indemnification.

### 2. *Count II states a claim upon which relief could be granted*

To survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: (1) existence of a contract; (2) breach of an obligation imposed by that contract; and (3) a resulting damage to the plaintiff.[55]

---

[54] *XL Specialty Ins. Co.*, 93 A.3d at 1217.
[55] *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

The City contends the plain language of the Settlement Agreement protects the City from incurring costs arising from or related to both the Federal Litigation and any related action, including the Pennsylvania Litigation.[56] The City alleges Durkin breached Paragraph 5 of the Settlement Agreement when it served the 2019 Subpoena because it forced the City to incur costs in a matter directly related to the Federal Litigation.[57] Similarly, the City argues the Declaratory Judgment Action was "separate litigation . . . related to the Pennsylvania Litigation," and, therefore, Paragraph 7 of the Settlement Agreement requires Durkin to indemnify the City for the costs it incurred in defending against that action.[58] If proven at trial, Durkin's failure to indemnify the City breaches the Settlement Agreement. Accordingly, the City properly pleads facts that would satisfy the three elements of breach of contract, which, if true, sets forth an adequate basis for relief.

### B. THE MOTIONS FOR SUMMARY JUDGMENT ARE **GRANTED,** IN PART AND **DENIED** IN PART

Both parties assert summary judgment is appropriate because there are no disputes of material fact; the contractual language is clear and unambiguous; and the sole issue before the Court is "whether the plain language of the Agreement requires

---

[56] Compl. ¶¶ 21-24.
[57] *Id.* ¶ 36.
[58] *Id.* ¶ 44.

the Durkin Parties to indemnify Newark for the costs it incurred in defending against the 2019 Subpoena and the Declaratory Judgment Action."[59]

1. ***The Declaratory Judgment Action was not a breach of the Settlement Agreement, and the City is not entitled to indemnification under Paragraph 7***

The City argues Durkin breached the Settlement Agreement by bringing the Declaratory Judgment Action and is entitled to indemnification for the costs it incurred in defending against that action.[60] The City asserts that Paragraph 7 of the Settlement Agreement protects the City from any claim related to the Pennsylvania Litigation, and, since the Declaratory Judgment Action is a "proceeding" related to the Pennsylvania Litigation, the City is entitled to indemnification.[61] In response, Durkin asserts the Declaratory Judgment Action sought clarity respecting the scope of the City's obligations under the Continuing Cooperation provision of the Settlement Agreement, and, therefore, it falls outside the scope of the indemnification provision in Paragraph 7.[62]

The Court agrees with Durkin. Paragraph 5 of the Settlement Agreement explicitly provides that Durkin does not release the City from its obligations under this Agreement. The Declaratory Judgment Action sought clarity regarding the

---

[59] Pl.'s Mot. for Summ. J. ¶ 12.
[60] *Id.* ¶ 14.
[61] *Id.* ¶ 14.
[62] Defs.' Resp. in Opp. to Pl.'s Mot. for Summ. J. and Cross-Mot. For Summ. J ¶ 15.

15

scope of the Settlement Agreement's Continuing Cooperation provision in Paragraph 18. Therefore, the Declaratory Judgment Action was not a breach under Paragraph 5, as it sought to define the City's obligations under the Settlement Agreement. The City is also not entitled to indemnification for its costs and attorneys' fees under Paragraph 7.

### 2. *The City is entitled to indemnification under Paragraph 7 for costs it incurred in defending against the 2019 Subpoena*

Paragraph 7 obligates Durkin to indemnify the City "[i]f a claim of any nature and by any party … is brought against" the City. Therefore, the central issue here is whether the 2019 Subpoena constitutes a "claim" under the Settlement Agreement. When a term is undefined, as it is here, the Court may assume the parties intended to give the term its plain, ordinary meaning.[63] To provide an undefined term its plain, ordinary meaning, this Court looks to the dictionary definition of the word.[64] Black's Law Dictionary defines claim as, "[t]he assertion of any existing right;" or, "[a] demand for money, property, or a legal remedy to which one asserts a right."[65]

The 2019 Subpoena, *inter alia*, specifically sought from the City, "[a]ll documents between the City and Cottrell relating to any claims or complaints

---

[63] *Lorillard Tobacco Co. v. Am. Legacy Found.*,903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.")

[64] *Id.* ("[D]ictionaries are the customary reference source that a reasonable person in the position of a party to a contract would use to ascertain the ordinary meaning of words not defined in the contract.")

[65] *Claim*, Black's Law Dictionary (11th Ed. 2019).

brought by the City in the Newark Litigation."[66]  The 2019 Subpoena is a "claim" under the word's plain, ordinary meaning because it is a "demand … for a legal remedy" to which Durkin asserts it has a right.  While the City may be seeking documents and communications, Paragraph 7 explicitly applies to "claims of *any* nature."  Durkin's request meets the definition of a claim as that term is used in the Settlement Agreement.

Additionally, the attorneys' fees and costs incurred by the City in moving to quash the 2019 Subpoena were incurred in a proceeding related to the Pennsylvania Litigation, as required by Paragraph 7.  Specifically, the 2019 Subpoena and the City's costs in defending against it arose from the discovery phase of the Pennsylvania Litigation.  Therefore, any costs incurred by the City in responding to and defending against the 2019 Subpoena are covered under Paragraph 7 of the Settlement Agreement.

Finally, at oral argument, Durkin argued that the scope of Paragraph 7 is limited to claims for indemnification or contribution brought against the City in the Pennsylvania Litigation or a separate proceeding.[67]  As the City points out, and the Court agrees, the plain language of Paragraph 7 is much broader.  It states that

---

[66] Petition for Issuance of Subpoena at 2, *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, 19M-01-106 (Del. Super. Ct. 2019).
[67] Transcript of Argument on Pl.'s Mot. for Summ. J. and Defs.' Mot. to Dismiss at 10, *City of Newark v. Donald M. Durkin Contracting, Inc., Donald M. Durkin, Jr., James Durkin, Michael Durkin*, C.A. No: N21C-12-039 (Del. Super. Ct. Mar. 11, 2022).

Durkin will indemnify the City, "[i]f a claim of any nature and by any party, including but not limited to a claim for indemnification or contribution, is brought against the Newark Parties in the Litigation, or in separate litigation or proceedings related to the Litigation." Paragraph 7 certainly contemplates and encompasses claims for indemnification or contribution – but is not limited to only such claims.

Under the terms of Paragraph 7, Durkin is required to "pay fees and expenses as required by this Section within thirty days of submission of statements" by the City. The City served its indemnification demand for the 2019 subpoena on January 11, 2021.[68] To date, Durkin has not indemnified the City for attorneys' fees and costs associated with the 2019 Subpoena. Therefore, Durkin is in breach of the terms of the Settlement Agreement.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**, Plaintiff's Motion for Summary Judgment is **GRANTED**, **in part and DENIED**, **in part** and Defendants' Motion for Summary Judgment is **GRANTED**, **in part and DENIED**, **in part**.

**IT IS SO ORDERED.**

*/s/ Patricia A. Winston*
**Judge Patricia A. Winston**

---

[68] Compl. ¶ 47.